UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

Kwok Yu Lam


v.                                                    Case No. 1:25-cv-432-JL


Strafford County House of Corrections,
Superintendent, et al.

**MEMORANDUM ORDER**

Petitioner Kwok Yu Lam's habeas petition, in which he brings claims under the

Fifth Amendment of the U.S. Constitution and the Administrative Procedure Act, 5 U.S.C

§ 706(2)(A), concerns whether the respondents[1] can continue to detain him under

8 U.S.C. § 1231(a) without a bond hearing.

This court has jurisdiction under 28 U.S.C. §§ 1331 and 2241 (federal question

and habeas corpus).  Having reviewed the parties' briefing and held oral argument, the

court orders the respondents to provide the petitioner with a bond hearing in Immigration

Court because there is no significant likelihood of his removal in the reasonably

foreseeable future.  *See Zadvydas v. Davis*, 533 U.S. 678, 701 (2001).

I.    **Background**

Petitioner Kwok Yu Lam, a Chinese national from Hong Kong, brings a due

---

[1] The petitioner names respondents Strafford County House of Corrections and Chris Brackett as
Superintendent; Immigration and Customs Enforcement, Enforcement and Removal Operations,
Boston Field Office and Patricia Hyde as Director; U.S. Immigration and Customs Enforcement
and Todd Lyons as Director; U.S. Department of Homeland Security and Kristi Noem as
Secretary; and Pamela Bondi, U.S. Attorney General.  *See* Pet. Writ Habeas Corpus (Pet.) (doc.
no. 1) at 1.

process claim under *Zadvydas*.[2]  He entered the United States in 2005 on a B-1 90-day visitor visa, which he overstayed.[3]  He had no contact with immigration authorities until he was arrested by the Malden, Massachusetts Police Department in May 2019.[4]  Malden PD subsequently dismissed the charges against him.[5]  On his release from state custody a few days later, ICE detained him and charged him with removability under 8 U.S.C. § 1227(a)(1)(B).[6]  An Immigration Court ordered Lam removed in October 2019.[7]  Lam did not appeal the order.[8]  In January 2020, ICE placed Lam under an order of supervision, which involved regular home and office visits under ICE's Intensive Supervision Appearance Program.[9]  He complied with all his responsibilities under the supervision order.

At a scheduled office visit on April 3, 2025, ICE issued Lam a departure plan, directing him to provide, by April 17, an itinerary with an airplane ticket, with a departure date of May 1, 2025.[10]  At the time he did not hold a travel document or passport and ICE ordered him to obtain one before the April 17 deadline.[11]  On April 17 he appeared at a local ICE field office and provided documentation showing that, despite applying for a travel document, he was unable to obtain one in time due to a delay in the Consulate

---

[2] Pet. (doc. no. 1) at ¶ 7.
[3] Chan Decl. (doc. no. 22-1) at ¶ 7.
[4] *Id.* at ¶ 8.
[5] *Id.*
[6] *Id.*
[7] *Id.* at ¶ 11.
[8] *Id.*
[9] Pet. (doc. no. 1) at ¶¶ 19-21.
[10] Chan Decl. (doc. no. 22-1) at ¶ 14.
[11] *Id.*

Office.[12]  The local ICE office told him to report back on June 11, 2025, but a week later, on April 25, ordered him to report to its Boston office immediately, where it took him into custody under 8 U.S.C. § 1231.[13]  He is being held at the Strafford County Department of Corrections.[14]

While in detention Lam made two attempts, in May and September, to re-open his immigration proceedings, both of which an Immigration Court denied.[15]  On September 17, ICE requested a travel document for Lam from the Chinese Consulate for the first time.[16]  ICE made a second attempt to obtain travel documents for Lam in October.  So far ICE has not received any response from the Chinese Consulate on its requests.[17]  ICE has conducted three Post Order Custody Reviews during Lam's detention and found in each that continued detention was justified because the Lam "had not demonstrated that he would not pose a danger to the community, to the safety of other persons or to property, [or] a significant flight risk and threat to border security."[18]  DHS explains that it has removed over 1,800 noncitizens to China in fiscal year 2025,[19] but provides no explanation for the delay in removing Lam.

Lam is married and has two U.S.-citizen children.  Lam's wife has legal status to

---

[12] Pet. (doc. no. 1) at ¶ 25.

[13] Chan Decl. (doc. no. 22-1) at ¶ 15.

[14] Id.

[15] Id. at ¶¶ 16, 21.

[16] Id. at ¶ 18.

[17] The government confirmed that as of the date of oral argument, December 15, 2025, it still had no updates on the travel documents or explanations for the delay from either ICE or the Chinese Consulate.

[18] Id. at ¶ 17.

[19] Id. at ¶ 23.

remain in the United States.

## II.    Applicable legal standard

District courts have jurisdiction to hear federal habeas petitions.  *See* 28 U.S.C. § 2241(a).  The petitioner carries the burden to establish entitlement to a writ of habeas corpus by proving that his custody violates the Constitution, laws, or treaties of the United States.  *Espinoza v. Sabol*, 558 F.3d 83, 89 (1st Cir. 2009) ("The burden of proof of showing deprivation of rights leading to an unlawful detention is on the petitioner.").

## III.    Analysis

Post-removal detention of six months under 8 U.S.C. § 1231(a) is presumptively reasonable.  *Zadvydas*, 533 U.S. at 701.  "[A]fter this 6–month period [of detention], once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing."  *Id.*  "[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink."  *Id.*

Lam argues that there is no significant likelihood of removal in the reasonably foreseeable future because the Chinese government has not responded to any requests, by Lam or the respondents, for travel documents over the last eight months.[20]  Because the government has failed to provide any meaningful update on the travel documents or explanation for the delay, they have failed to rebut Lam's showing that removal is not

---

[20] Pet. (doc. no. 1) at 5-6; Reply (doc. no. 25) at 3-4.

likely in the reasonably foreseeable future.[21]  Under the specific facts and circumstances here, viewed through the lens of the efforts and processes involved, the court agrees.

The government compares the case to *Mezan v. U.S. Dep't of Homeland Sec.*, where the court found that no relief was available because the petitioners were not in a *Zadvydas*-type "removable-but-unremovable limbo."  No. 19-CV-816-SM, 2019 WL 4804804, at *3 (D.N.H. Oct. 1, 2019) (McAuliffe, J.).  Instead, in *Mezan*, "South Sudan ha[d] issued [the petitioner] a travel permit, which, although now since expired, demonstrates its willingness to accept [him]."  But here the Chinese government so far has not issued any travel document for Lam, to Lam or to the government, and thus hasn't shown a similar willingness to accept him.  Although the Chinese government has not affirmatively refused to accept Lam, or implemented a blanket ban on repatriations, *see Zhu v. Seattle ICE Field Off. Dir.*, No. C21-255-TSZ-SKV, 2021 WL 3725653, at *3 (W.D. Wash. Aug. 17, 2021), the respondents have not shown any indication of willingness by the Chinese government to act on Lam's case.  *See Siguenza v. Moniz*, No. 25-CV-11914-ADB, 2025 WL 2734704, at *3 (D. Mass. Sept. 25, 2025) ("*Zadvydas* 'appears to place the burden of production on the detainee, but the ultimate burden of persuasion on the government'" (quoting Mary Holper, *The Beast of Burden in Immigration Bond Hearings*, 67 Case W. Rsrv. L. Rev. 75, 104–05 (2016))).  The respondents cite *Thai v. Hyde*, 788 F. Supp. 3d 57, 61 (D. Mass. 2025) for the proposition that a petitioner's removal is "foreseeable where ICE had 'previously removed at least 25

---

[21] Reply (doc. no. 25) at 4.

similarly situated aliens' to his home country,"[22] but they provide no information, nor make any argument, showing that Lam is "similarly situated" to other noncitizens removed to China this year.  The only information on the record about the Chinese government's processing of Lam's travel documents is an assertion in the petition that, as of April 2025, Lam could not obtain travel documents for himself because of a "delay" in the Chinese consulate.[23]

The government argues that Lam has not claimed that the Chinese consulate "refused to provide a travel document or told him that he would be unable to obtain a travel document at all," citing two cases in which petitioners attempted for multiple years to obtain the necessary travel documents.[24]  But Lam is not required to demonstrate that he is or will be subject to multi-year detention while awaiting travel documents from the Chinese government.  He is required to show (in addition to his length of detention) "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.  Under the facts and circumstances here, his almost eight-month detention and his showings of the government's inability to procure the necessary travel documents, or a date by which it may do so, satisfy his burden.  *See Hamama v. Adducci*, No. 17-CV-11910, 2019 WL

---

[22] Opp. (doc. no. 22) at 6-7.

[23] Pet. (doc. no. 1) at ¶ 25.

[24] Opp. (doc. no. 22) at 7, citing *Ambila v. Joyce*, No. 2:25-CV-00267-NT, 2025 WL 1534852, at *4 (D. Me. May 28, 2025) (no significant likelihood of removal where petitioner provided evidence of "his and DHS's failed attempts to obtain a Congolese passport and travel documents necessary for his removal over the eighteen-year history of [the petitioner]'s removal proceeding"); *Yang v. Kaiser*, No. 2:25-CV-02205-DAD-AC (HC), 2025 WL 2791778, at *6 (E.D. Cal. Aug. 20, 2025) (no significant likelihood of removal where "petitioner has attempted for multiple years [unsuccessfully] to secure travel documents to facilitate his return to China").

2118784, at *3 (E.D. Mich. May 15, 2019) (Release justified where "[t]he Government has detained [petitioner] beyond the six-month period set forth in *Zadvydas*. … The Government has not obtained travel documents and itinerary for [petitioner], which would indicate removal is not imminent."); *see also Nyonton v. Brackett*, No. 18-CV-481-PB, 2019 WL 1082203, at *3 (D.N.H. Mar. 7, 2019) (Barbadoro, J.) ("[C]ontinued detention cannot be authorized without an individualized bond hearing" where § 1231 detention had lasted more than six months, "[the petitioner] still lacks travel documents," and "[t]he government has no date by which it expects to receive those documents, much less remove petitioner.").

## IV.    Conclusion

The government has detained Lam for longer than the presumptively-reasonable six months under *Zadvydas*.  There is no significant likelihood of his removal to China in the reasonably foreseeable future.  Lam and the government have been unable to obtain travel documents for his departure since April 2025 and the government provides no date by which it expects to receive those documents, nor justifications for the delay.  Under these facts and circumstances, Lam is entitled to a bond hearing.[25]  Accordingly, the court GRANTS habeas relief as follows:[26] the respondents shall provide the petitioner with a bond hearing as soon as practicable.  The petition is denied in all other respects.

---

[25] At oral argument, the government agreed that a bond hearing in an Immigration Court is appropriate remedy for a *Zadvydas* claim.  *But see G.P. v. Garland*, No. 1:23-CV-322-PB, 2024 WL 328435, at *5 (D.N.H. Jan. 29, 2024), *aff'd*, 103 F.4th 898 (1st Cir. 2024) (Barbadoro, J.) ("[W]hen a court addresses a *Zadvydas* claim, the only remedy the court can produce is immediate release under conditions.")

[26] Doc. no. 1.

SO ORDERED.

_____
Joseph N. Laplante
United States District Judge

Dated:  December 16, 2025

cc: Counsel of Record